IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNY LLOYD, SR., # N-03561, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ZACHARY ROECKEMAN, )<br>STEPHEN A. JOHNSON, )<br>MARK A. BURTON, )<br>JENNIFER WALLACE, )<br>UNKNOWN PARTY ARB OFFICER, )<br>and DONALD STOLWORTHY, )<br>)<br>Defendants. ) | Case No. 15-cv-1021-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, currently incarcerated at Centralia Correctional Center ("Centralia"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving sentences of 30 years for attempted murder and 20 years for armed robbery. He claims that Defendants deprived him of his constitutional rights to due process and equal protection, because they improperly subjected him to sanctions based upon a false disciplinary report.

According to the complaint, on April 23, 2015, Correctional Officer Rose (who is not a named Defendant) handcuffed Plaintiff, took him to segregation, and issued a disciplinary report against him (Doc. 1, p. 6). Plaintiff's exhibits reveal that he was charged with insolence and disobeying a direct order, for "cross talking" in the dietary unit and continuing to do so after Officer Rose told him to stop (Doc. 1-1, p. 1).

Several days prior to the adjustment committee hearing on these charges, Plaintiff made a written request for witnesses to aid his defense, including three correctional officers who were

present during Plaintiff's encounter with Officer Rose. On April 29, 2015, Defendants Johnson and Burton conducted Plaintiff's disciplinary hearing, but refused to interview or call any of Plaintiff's witnesses. They found Plaintiff guilty of the infractions and punished him with 30 days in segregation, 30 days in "C-Grade" status, and 60 days of work assignment restriction (Doc. 1, p. 8).

On May 6, 2015, Plaintiff filed an emergency grievance directed to Defendant Warden Roeckeman, complaining that his due process rights had been violated in the disciplinary hearing. Defendant Roeckeman denied the grievance. On May 12, Plaintiff sought redress from Defendant Wallace (Grievance Officer), who summarily dismissed his grievance without conducting any independent investigation (Doc. 1, p. 9). Defendant Roeckeman approved that disposition on May 27, 2015.

Plaintiff submitted a second grievance on May 21, 2015, claiming that Officer Rose had filed a false disciplinary report against him.[1] Defendant Wallace denied that grievance as a duplicate, but Plaintiff challenges her conclusion, pointing out that the issues he raised were distinct from the complaints in the first grievance.

Plaintiff was kept in punitive segregation for 31 days; he was then placed in the "receiving unit" for 24 more days before he was allowed back into general population (Doc. 1, p. 8).

On June 18, 2015, Plaintiff appealed the denial of his original grievance to the Administrative Review Board (ARB) of the Illinois Department of Corrections (IDOC). His appeal was denied by the Unknown Defendant ARB Officer and Defendant IDOC Director

---

[1] Plaintiff's grievance, as well as the summary of his testimony at the disciplinary hearing, states his belief that Officer Rose singled him out and issued the report in retaliation for an earlier grievance that he brought against her. Plaintiff did not include a retaliation claim in this action, nor did he include Officer Rose as a Defendant. The Court makes no comment regarding the potential merits of such a claim.

Stolworthy (Doc. 1, p. 10).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After fully considering the allegations in Plaintiff's complaint, the Court concludes that

this action is subject to summary dismissal.

**Deprivation of a Liberty Interest Without Due Process**

Plaintiff focuses his claims on the actions of the adjustment committee (Defendants Johnson and Burton), who failed to honor his request to call four witnesses for his hearing or have them interviewed.[2] Indeed, the failure to call witnesses on behalf of a prisoner facing disciplinary action may be the foundation for a due process claim. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed). Due process also requires that the disciplinary decision have at least minimal evidentiary support. *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"); *see also Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends"). The account of the reporting officer may satisfy this requirement.

Three of Plaintiff's requested witnesses were correctional officers; only one was a fellow prisoner. Plaintiff was given no explanation for why his witness request was not honored. Some of his documentation indicates that his witness request was never received by the committee (Doc. 1-1, pp. 1, 24). The Court will assume for the purpose of preliminary review that Defendants Johnson and Burton improperly refused to honor Plaintiff's witness request. In the context of Plaintiff's factual allegations, however, this failure to comply with procedural due process does not rise to the level of a constitutional violation.

---

[2] As noted above, Plaintiff did not include Correctional Officer Rose, who issued the allegedly false disciplinary report against him, among the named Defendants. The due process analysis below applies equally to Officer Rose's involvement, however, and the Court is satisfied that Plaintiff still would have no viable due process claim even if he had included this officer as a Defendant.

Under certain limited circumstances, an inmate who is punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). But those circumstances are not present in the instant case.

Despite the failure to call or interview Plaintiff's witnesses, he was not deprived of a protected liberty interest of constitutional dimension.[3] An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005)

---

[3] The due process analysis focuses on disciplinary segregation, because the other punishments imposed (demotion to C-Grade and work sanctions) do not implicate a constitutionally protected liberty or property interest. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).

(56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

Here, Plaintiff's disciplinary confinement lasted only 31 days. This is a relatively minimal time under the precedents cited above, particularly when viewed in the context of his 30-year sentence. As such, *Marion* dictates that such a brief disciplinary confinement does not give rise to a due process liberty interest, no matter what conditions Plaintiff faced during his time in segregation. The additional 24 days Plaintiff spent in the "receiving unit" before being returned to general population does not change this analysis. There is no indication that the receiving unit placement was in any way punitive. Prison officials may move an inmate from one wing to another in the institution, including placement in administrative (nondisciplinary) segregation, or they may transfer the inmate to another prison, without implicating due process rights. *See Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992); *Pardo v. Hosier*, 946 F.2d 1278, 1281-84 (7th Cir. 1991).

Because of the brevity of Plaintiff's time in segregation, no inquiry into the conditions of that segregation is necessary. Furthermore, the complaint contains no hint that the conditions there represented an atypical or significant hardship distinct from those in administrative segregation. For these reasons, Plaintiff fails to state a claim upon which relief may be granted for a deprivation of a liberty interest without due process.

**Equal Protection**

Aside from Plaintiff's bald assertion that the events described in the complaint amounted

to a violation of his right to equal protection, he does not articulate how Defendants' actions ran afoul of this constitutional provision.

A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)). Put differently, the essence of an equal protection claim is that a prison official "singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group[,]" *Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996), and that the plaintiff suffered because of his membership in the group that was targeted for discrimination.

The complaint contains no facts to suggest that any of the Defendants purposely discriminated against a group that included Plaintiff. The disciplinary action against him does not appear to violate Plaintiff's rights to equal protection, and this claim is also subject to dismissal under § 1915A.

**Denial of Grievances**

Plaintiff's claims against the remaining Defendants (Roeckeman, Wallace, the Unknown Party ARB Officer, and Stolworthy) are based on their failure to reverse the disciplinary segregation and other sanctions imposed by Defendants Johnson and Burton, after Plaintiff filed grievances. First, because the original imposition of discipline did not violate Plaintiff's constitutional rights, neither did the failure to reverse that action through the grievance process. Secondly, the operation of the prison grievance procedure itself will not give rise to a constitutional claim.

The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Thus, any failure to investigate Plaintiff's grievances, or any other action or inaction with regard to the grievance procedure on the part of Defendants Roeckeman, Wallace, the Unknown Party ARB Officer, or Stolworthy, will not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

For all the above reasons, Plaintiff's complaint fails to state a constitutional claim upon which relief may be granted, and it does not survive § 1915A review. Further, even if Plaintiff were allowed to submit an amended complaint, it does not appear that a viable due process or equal protection claim could be stated, given the factual allegations already pled. Leave to amend a complaint need not be granted when such amendment would be futile. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013); *Garcia v. City of Chicago,* 24 F.3d 966, 970 (7th Cir. 1994). *See also Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (leave to amend should be freely given "unless it is certain from the face of the complaint that any amendment would be futile"). The Court concludes that amendment would indeed be futile in this case, even if counsel were to be recruited to assist Plaintiff in re-pleading his claim. This action shall therefore be dismissed.

**Disposition**

       **IT IS ORDERED** that this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. All pending motions are **DENIED AS MOOT**.

       Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes"[4] under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

       The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

       If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline

---

[4] Plaintiff has already incurred one other "strike" within the meaning of § 1915(g), when a previous case he filed in this Court was dismissed as frivolous. *Lloyd v. Davis, et al.*, Case No. 12-cv-113-JPG (S.D. Ill., dismissed Aug. 27, 2012).

cannot be extended.

    **IT IS SO ORDERED.**

    **DATED:  October 14, 2015**

                                                                      _____
                                                                     **NANCY J. ROSENSTENGEL**
                                                                     **United States District Judge**